UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 1:09CR57 |
| ) | |
| ) | SUPERSEDING BILL OF INDICTMENT |
| v. ) | |
| ) | Violations: |
| ) | 18 U.S.C. § 2 |
| ) | 18 U.S.C. § 152 |
| BRYAN KEITH NOEL ) | 18 U.S.C. § 1014 |
| ) | 18 U.S.C. § 1341 |
| ) | 18 U.S.C. § 1344 |
| ) | 18 U.S.C. § 1349 |
| ) | 18 U.S.C. § 1956(h) |
| ) | 18 U.S.C. § 1957 |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

**Introduction**

1. From in or about January 2003 through in or about July 2006, defendant BRYAN KEITH NOEL, together with unindicted co-conspirator Alexander Klosek and others, solicited more than one hundred investors to invest large sums of their retirement savings with Certified Estate Planners, Inc. (hereafter, "CEP") by promising a conservative investment strategy. Beginning in or around 2003, NOEL and Klosek, without the CEP clients' knowledge, diverted several million dollars of the clients' assets, thereby significantly decreasing the value of the clients' investments. NOEL and Klosek diverted the several million dollars of withdrawn investor assets to NOEL's start-up composite lumber company, then continually misrepresented the value of the assets on the quarterly statements mailed to clients so that the clients would not know the true diminished value of their assets. Based on this scheme, the CEP clients were defrauded of approximately $7 million.

1

## CEP and Pinnacle

2. In or around 1999, NOEL created CEP to solicit investors and to offer estate planning services geared towards retirees. NOEL and Klosek also created Pinnacle Fiduciary & Trust Group ("Pinnacle") to act as the business entity that managed the assets invested by CEP's clients. CEP and Pinnacle operated together to provide estate planning services to CEP clients. At times relevant to this indictment, NOEL, Klosek, and employees of CEP mailed and caused to be mailed quarterly statements to CEP clients via United States mail.

3. At times relevant to this indictment, NOEL held seminars for retirees and potential CEP clients at restaurants located in and around Hendersonville, North Carolina. At these seminars, NOEL touted his credentials as a "certified senior specialist" and promised a safe and conservative investment strategy for retirees. As late as in or about January 2006, NOEL submitted a residential mortgage loan application in which he stated that he was still then employed by CEP.

4. Based on these assurances of conservative investing, approximately 140 clients entrusted approximately $8 million of retirement savings to NOEL and Klosek.

## Bryan Noel's New Companies

5. In or around December 2002, NOEL created International Mineral Exchange (hereafter, "IME") in an attempt to enter the international mining business.

6. After IME proved unsuccessful, NOEL "morphed" IME into Titan Composites, Inc. (hereafter, "Titan"), a business which purported to manufacture and sell composite lumber.

7. NOEL convinced some CEP clients to use additional amounts of their retirement savings to purchase "convertible debentures" in Titan. Other clients, after being approached by

2
Case 1:09-cr-00057-RLV   Document 23   Filed 10/07/09   Page 2 of 19

NOEL, did not want to invest in Titan. Still other clients were never approached about investing in Titan.

### The Investment Fraud Scheme

8. Beginning in or around October 2003 and continuing until in or around May 2006, NOEL and Klosek agreed to withdraw or "loan," without CEP clients' knowledge, approximately $4.5 million from the Pinnacle accounts to IME and Titan.

9. Neither NOEL nor Klosek, or others working with them, ever communicated to CEP clients that this "loan" had occurred. In fact, NOEL and Klosek took numerous fraudulent steps to conceal from CEP clients that large portions of their retirement savings had been loaned to NOEL's latest start-up company, Titan.

10. From in or around December 2003 to July 2006, NOEL and Klosek made misrepresentations to CEP clients about the true value of the clients' assets by creating a fictitious rate of return for every quarter, applying that fictitious rate of return to the investors' supposed assets, then mailing and causing to be mailed quarterly statements to the clients misrepresenting the true value of their assets. NOEL and Klosek continued these misrepresentations over this two-and-a-half year period so that the CEP clients would not withdraw their remaining assets after learning that large portions of their retirement savings had been diverted to and used by Titan.

11. CEP clients relied on these fraudulent statements and, as a result of their reliance, most clients continued investing their retirement savings with NOEL and Klosek during this time period.

12. Some clients withdrew assets from CEP based on the fictitious rates of return and, unbeknownst to the clients, withdrew significantly more than the actual value of their investment

due to the phony returns displayed on the CEP quarterly statements. NOEL and Klosek used other investors' money to pay the fraudulently inflated withdrawn amounts.

13. In or around July 2006, NOEL and Klosek misrepresented to investors that their assets had grown to a total of approximately $16 million. In reality, investors' assets had shrunk in value to an amount significantly less than the amount reported to investors.

### The First Bank Fraud Scheme

14. In or about January 2006, NOEL caused Titan to apply for a loan from Carolina First Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (hereafter, "FDIC").

15. On or about January 26, 2006, NOEL, on behalf of Titan, executed the loan agreements between Carolina First Bank and Titan for a loan in the amount of approximately $1,250,000 (hereafter, "the $1.25M loan").

16. The promissory note for the $1.25M loan was signed by NOEL as president of Titan and represented that the funds were to be used "to purchase equipment and payoff loan #[XXXXXX]3234."

17. The funds for the $1.25M loan were provided in the form of a check from Carolina First Bank to Attorney X in Hendersonville, North Carolina, who deposited the funds into his law firm's trust account. Attorney X then further disbursed the funds to Titan and others.

18. In an effort to recover CEP and Pinnacle investor funds that had been lost, NOEL caused Titan to transfer to Pinnacle approximately $700,000 of the proceeds of the $1.25M loan, to be invested in the stock market. However, these funds too were lost by Pinnacle in speculative investments.

4

19. Ultimately, the $1.25M loan went into default and the bank foreclosed on the collateral.

## The Second Bank Fraud Scheme

20. In or about July and August 2006, NOEL submitted two mortgage loan applications on his behalf to JP Morgan Chase Bank, NA, the deposits of which were then insured by the FDIC. One of the applications was for a loan in the amount of approximately $816,000, and the other application was for a loan in the amount of approximately $286,000. These mortgage loans were both to be secured by NOEL's residence at 1235 5th Avenue West in Hendersonville, North Carolina (also known as the "Blue House").

21. The mortgage loan applications submitted by NOEL for the mortgage loans on the Blue House both listed his employer as Titan and falsely reported his income as $23,000 per month. NOEL's 2006 federal income tax return reported annual income of approximately $150,000 (approximately $12,500 per month).

22. On or about August 24, 2006, NOEL executed the loan agreements between himself and JP Morgan Chase Bank, NA for the two mortgage loans secured by the Blue House and in the total amount of approximately $1.1 million. The loan funds were then wired from JP Morgan Chase Bank, NA to the trust account of Attorney X in Hendersonville, North Carolina.

23. Ultimately, the mortgage loans for the Blue House went into default and the bank foreclosed on the Blue House.

## The Bankruptcy Fraud Scheme

24. After investors learned that NOEL and Klosek had perpetrated a fraud, many of them sought to recoup some of their money by filing civil lawsuits against NOEL, Klosek and others.

25. On or about August 14, 2007, NOEL filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Western District of North Carolina (hereafter, "the Bankruptcy Court").

26. NOEL fraudulently omitted from his Bankruptcy Petition (hereafter, "the Petition") and Statement of Financial Affairs some of his assets, thereby concealing such assets from the Bankruptcy Court and the United States Bankruptcy Trustee (hereafter, "the Trustee"), the official designated to dispose of the defendants' bankruptcy estates.

27. These intentional omissions and misrepresentations by NOEL materially and detrimentally interfered with the Trustee's and with the Bankruptcy Court's efforts to properly dispose of NOEL's bankruptcy estate.

## COUNT ONE
## 18 U.S.C. § 1349
### (Conspiracy)

28. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 13 of the Superseding Bill of Indictment, and further alleges that:

29. From in or about 2003 through in or about June 2006, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

**BRYAN KEITH NOEL,**

knowingly conspired, confederated and agreed with Klosek and others known and unknown to the Grand Jury, having devised the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, to knowingly and willfully cause things to be sent and delivered by mail and by private and commercial interstate carrier for the purposes of executing the above-described scheme and artifice, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.

7
Case 1:09-cr-00057-RLV   Document 23   Filed 10/07/09   Page 7 of 19

# COUNTS TWO THROUGH TWENTY-SIX
## 18 U.S.C. § 1341
### (Mail Fraud)

30. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 13 of the Superseding Bill of Indictment, and further alleges that:

31. On or about the dates set forth below, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

**BRYAN KEITH NOEL,**

aided and abetted by Klosek and others, having devised the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly and willfully caused things, as described below, to be sent and delivered by mail and by private and commercial interstate carrier for the purposes of executing said scheme and artifice, each instance described below being a separate violation of Title 18, United States Code, Sections 1341 and 2:

| COUNT | DATE | MAILING |
|---|---|---|
| 2 | June 24, 2004 | C.B. CEP quarterly statement, dated June 24, 2004, mailed via United States mail |
| 3 | April 15, 2005 | C.B. CEP quarterly statement, dated April 15, 2004, mailed via United States mail |
| 4 | March 24, 2006 | C.B. CEP quarterly statement, dated March 24, 2006, mailed via United States mail |
| 5 | April 15, 2005 | L.B. CEP quarterly statement, dated April 15, 2005, mailed via United States mail |
| 6 | March 24, 2006 | L.B. CEP quarterly statement, dated March 24, 2006, mailed via United States mail |
| 7 | July 5, 2006 | L.B. CEP quarterly statement, dated July 5, 2006, mailed via United States mail |

| COUNT | DATE | MAILING |
|---|---|---|
| 8 | June 28, 2004 | J.C. and S.C. CEP quarterly statement, dated June 28, 2004, mailed via United States mail |
| 9 | January 11, 2005 | J.C. and S.C. CEP quarterly statement, dated January 11, 2005, mailed via United States mail |
| 10 | July 17, 2006 | The C. Family RAMT CEP quarterly statement, dated July 17, 2006, mailed via United States mail |
| 11 | June 28, 2004 | J.E. and V.E. CEP quarterly statement, dated June 28, 2004, mailed via United States mail |
| 12 | September 29, 2005 | The J.E. and V.E. Family RAMT CEP quarterly statement, dated September 29, 2005, mailed via United States mail |
| 13 | July 5, 2006 | The J.E. and V.E. RAMT CEP quarterly statement, dated July 5, 2006, mailed via United States mail |
| 14 | January 11, 2005 | N.G. CEP quarterly statement, dated January 11, 2005, mailed via United States mail |
| 15 | December 29, 2005 | J.K. and B.K. CEP quarterly statement, dated December 29, 2005, mailed via United States mail |
| 16 | July 24, 2006 | J.K. and B.K. CEP quarterly statement, dated July 24, 2006, mailed via United States mail |
| 17 | June 23, 2004 | F.L. and S.L. CEP quarterly statement, dated June 23, 2004, mailed via United States mail |
| 18 | June 25, 2005 | F.L. and S.L. CEP quarterly statement, dated June 25, 2005, mailed via United States mail |
| 19 | July 5, 2006 | The L. Family RAMT CEP quarterly statement, dated July 5, 2006, mailed via United States mail |
| 20 | March 28, 2006 | H.P. CEP quarterly statement, dated March 28, 2006 mailed via United States mail |
| 21 | September 30, 2004 | C.S. and S.S. CEP quarterly statement, dated September 30, 2004, mailed via United States mail |
| 22 | January 4, 2006 | C.S. and S.S. CEP quarterly statement, dated January 4, 2006, mailed via United States mail |
| 23 | July 5, 2006 | C.S. and S.S. CEP quarterly statement, dated July 5, 2006, mailed via United States mail |
| 24 | June 25, 2004 | J.T. and M.T. CEP quarterly statement, dated June 25, 2004, mailed via United States mail |

| COUNT | DATE | MAILING |
|---|---|---|
| 25 | April 13, 2005 | J.T. and M.T. CEP quarterly statement, dated April 30, 2005, mailed via United States mail |
| 26 | July 18, 2006 | J.T. and M.T. CEP quarterly statement, dated July 18, 2006, mailed via United States mail |

# COUNT TWENTY-SEVEN
## 18 U.S.C. § 1956(h)
### (Money Laundering Conspiracy)

32. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 13 of the Superseding Bill of Indictment, and further alleges that:

33. From in or about 2003 through in or about June 2006, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

**BRYAN KEITH NOEL,**

knowingly combined, conspired, and agreed with Klosek and others known and unknown to the Grand Jury, to engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWENTY-EIGHT THROUGH TWENTY-NINE
## 18 U.S.C. § 1344
### (Bank Fraud)

34. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 23 of the Superseding Bill of Indictment, and further alleges that:

35. On or about the dates set forth below, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

### BRYAN KEITH NOEL,

knowingly executed and attempted to execute schemes and artifices to defraud financial institutions, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of said financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, each instance identified below being a separate violation of Title 18, United States Code, Section 1344.

| COUNT | DATE | FINANCIAL INSTITUTION |
|---|---|---|
| 28 | January 2006 | Carolina First Bank |
| 29 | August 2006 | JP Morgan Chase Bank, NA |

# COUNTS THIRTY THROUGH THIRTY-ONE
## 18 U.S.C. § 1014
### (False Statement to Bank)

36. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 23 of the Superseding Bill of Indictment, and further alleges that:

37. On or about the dates set forth below, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

**BRYAN KEITH NOEL,**

knowingly made and caused to be made false statements and reports for the purpose of influencing the action of institutions, the accounts of which were then insured by the FDIC, upon applications, loans, and acceptances of security therefore, each instance described below being a separate violation of Title 18, United States Code, Section 1014.

| COUNT | DATE | FALSE STATEMENT |
|---|---|---|
| 30 | January 26, 2006 | Promissory note with Carolina First Bank for $1.25M loan |
| 31 | August 24, 2006 | Mortgage loan application to JP Morgan Chase Bank, NA |

13

## COUNT THIRTY-TWO
## 18 U.S.C. § 1957
## (Money Laundering)

38. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 23 of the Superseding Bill of Indictment, and further alleges that:

39. On or about January 27, 2006, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

**BRYAN KEITH NOEL,**

knowingly engaged in, attempted to engage in, a monetary transaction in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, and aided and abetted the same, in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS THIRTY-THREE
## 18 U.S.C. § 152
## (False Oath)

40. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 27 of the Superseding Bill of Indictment, and further alleges that:

41. On or about August 14, 2007, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant,

**BRYAN KEITH NOEL,**

did knowingly and fraudulently make a false oath and account in and in relation to a bankruptcy proceeding, to wit, NOEL did not disclose on the Petition assets that were in his possession as of the date of his petition, including but not limited to: a 2007 BMW 550i, VIN WBANB53537CP05191, purchased on or about September 14, 2006, and titled to NOEL dba Excaliber Business Systems, LLC.

In violation of Title 18, United States Code, Section 152(2).

# COUNTS THIRTY-FOUR
## 18 U.S.C. § 152
### (False Oath)

42. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 27 of the Superseding Bill of Indictment, and further alleges that:

43. On or about August 14, 2007, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant,

**BRYAN KEITH NOEL,**

did knowingly and fraudulently make a false oath and account in and in relation to a bankruptcy proceeding, to wit, NOEL misrepresented the true state of his financial affairs by failing to disclose on his Statement of Financial Affairs the amount of income he had received in 2005 from CEP, Pinnacle, and Silverado Financial Group, LLC.

In violation of Title 18, United States Code, Section 152(2).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

44. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 27 of the Superseding Bill of Indictment, and further alleges that:

45. Notice is hereby given of the provisions of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by § 981(a)(1)(C). The defendant has or had a possessory or legal interest in the following property that is subject to forfeiture in accordance with section 982 and/or section 2461(c):

    a. all property involved in the violations alleged in this bill of indictment;

    b. all property which is proceeds of such violations; and,

    c. in the event that any property described in (a) or (b) cannot be located or recovered or has been substantially diminished in value or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant, to the extent of the value of the property described in (a) and (b).

46. The grand jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

    a. All currency and monetary instruments which were received during, involved in or used or intended to be used to facilitate the crimes alleged in this bill of indictment, including but not limited to the following:

        i. the sum of approximately $7,000,000.00 in proceeds; and,

ii. all funds, including but not limited to $286,783.57, in Wachovia Account 2000026505189, such account held in the name of Pinnacle Fiduciary & Trust Group;

iii. all funds, including but not limited to $292,350.09, in Ameritrade Account 706059117, such account held in the name of Pinnacle Fiduciary & Trust Group;

iv. all funds, including but not limited to $407,469.67, in Tradestation Account 17243339, such account held in the name of Pinnacle Fiduciary & Trust Group;

v. all funds, including but not limited to $3,106.21, in Tradestation Account 17241607, such account held in the name of Pinnacle Fiduciary & Trust Group;

vi. all funds, including but not limited to $533.01, in Tradestation Account 17240487, such account held in the name of Pinnacle Fiduciary & Trust Group;

vii. all funds, including but not limited to $1,290.39, in Tradestation Account 17242607, such account held in the name of Pinnacle Fiduciary & Trust Group FBO International Mineral Exchange;

vii. all funds, including but not limited to $2948.00, in Fidelity Account Z44043583, such account held in the name of Pinnacle Fiduciary & Trust Group; and

viii. all funds, including but not limited to $3632.00, in Fidelity Account Z44671681, such account held in the name of Pinnacle Fiduciary & Trust Group;

b. the following automobiles:

i. one 2007 BMW 550i, VIN WBANB53537CP05191, titled to Bryan Noel dba Excaliber Business Systems, LLC; and

ii. one 2006 Honda Ridgeline, VIN 2HJYK16576H509699, titled to Bryan Noel and H.N.

c. any and all interest of Bryan Noel in the following businesses:

i. Certified Estate Planners, LLC;

ii. Pinnacle Fiduciary and Trust Group aka Pinnacle Advisory Group;

iii. Silverado Financial Group, LLC; and

iv. Titan Composites Incorporated.

A TRUE BILL.

FOREPERSON

EDWARD R. RYAN
ACTING UNITED STATES ATTORNEY

*/s/ Melissa L. Rikard*
MELISSA L. RIKARD
ASSISTANT UNITED STATES ATTORNEY

*/s/ Matthew T. Martens*
MATTHEW T. MARTENS
ASSISTANT UNITED STATES ATTORNEY